*In the matter of the Estate of* WILLIAM McLAUGHLIN, *deceased.*

The testator devised certain property to his wife during her widowhood, *until* his youngest son should arrive at age, *when* he directed it to be sold by his executors, and the proceeds to be distributed as prescribed in his will. After sundry legacies, he gave "all the rest, residue, and remainder," of his estate to his wife absolutely. The widow having died, the assignee of parties entitled to legacies out of the proceeds of property devised to· the testator's wife during her widowhood, cited the executor to account, claiming that on the death of the widow, the time designated for the sale of the premises had arrived—*Held*, that the direction to sell was *conditional*, and the legatees of the proceeds of the sale when made, have no claim until the power can be executed according to the provisions of the will. The time set for the execution of the power is, "when" the testator's youngest child should attain majority. A direction to convert realty into personalty to pay legacies, is not accelerated so long as the condition on which it is to take effect is capable of literal consummation.

DAVID HARRISON, JR., D. T. WALDEN, *for Petitioner.*

I. The petitioner is entitled to an account, he having a demand against the personal estate of the deceased, as

representing the shares of three sons, Nicholas, Alfred, and Henry, legatees.    (2 *R. S.*, 3*d ed.*, *p.* 155, § 55.)

II. The real estate, by the power of sale contained in the will, was converted into personal estate, and must be treated as such.    (*Fletcher* vs. *Ashburner*, 1 *Bro. C. C.*, 497; *S. C.*, 1 *White & Tudor's Eq. Cases, Law Library*, vol. 49, *pp.* 546, 555, 6, *and American Cases*, 563 *to* 566; 1 *Jarman on Wills*, 529, 531; *Crary* vs. *Leslie*, 3 *Wheaton R.*, 564.)

III. The bequest to the sons was vested immediately on the death of the testator    (2 *R. S.*, *p.* 9, § 13, 3*d ed.*; *May* vs. *Wood*, 3 *Bro. C. C.*, 471; 1 *Jarman on Wills*, 756; 1 *Roper on Legacies*, 431; *Tucker* vs. *Ball*, 1 *Barb. S. C. R.*, 94; *Sweet* vs. *Chase*, 2 *Comst. R.*, 73, *per Ruggles, J.*, *p.* 80.)

IV. The power of sale was to be executed upon the termination of the widow's estate.    This is clearly the intention of the testator.

1. The estate of the widow was for life, determinable on her marriage, or upon the youngest son arriving at age.

2. The age of the youngest son is a limitation of the widow's estate, and not a period fixed for the sale.

3. There is no provision for a continuance of the estate after the death of the widow, until the child becomes 21, if she dies previous to that time.

4. There is no provision for the accumulation of rents and profits, during any intermediate period.

5. There is no provision for any interval between the termination of widow's estate and age of son.

6. It is the *means provided* by the testator for distributing his estate among the children.

V. Upon the conversion of real into personal estate,

the executor was entitled to receive the rents and profits for the benefit of the legatees of the residue upon such sale. (*Allen* vs. *De Witt*, 3 *Comst.*, 285, *per Pratt, J.* ; 2 *Jarman on Wills*, 85 ; *Harris* vs. *Lloyd*, 1 *Turn. & Rus.*, 310; *Bullock* vs. *Stones*, 2 *Ves. Sen.*, 521 ; *Wyndham* vs. *Wyndham*, 3 *Bro, C. C.*, 58 ; 2 *R. S.*, 3*d ed.*, *p.* 12, § 40.)

JOHN S. WOODWARD, *for Executor.*

I. The applicant is not entitled now to an account.

1. He is not interested in the personal estate.

2. His interest arises by conveyance or transfer from Nicholas, Henry, and Alfred A. Mc Laughlin, of their interests in the premises No. 115 Elizabeth Street.

3. The power to sell contained in the will is a naked power in trust, to be exercised on a certain event, and for a special purpose, to wit., for the distribution of proceeds of sale. No estate vests in the executors, and they are not entitled to the rents intermediate the death of the widow and the actual sale. (1 *R. S.*, 729, § 56; *Vail* vs *Vail*, 4 *Paige*, 317 ; *Germond* vs. *Jones*, 2 *Hill*, 569.)

4. The power of sale cannot be exercised by the executors upon the death of the widow, nor until the majority of the youngest child.

Such was the intention of the testator, as evident from the whole will.

The testator contemplated the event of the majority of his youngest child, and that it might happen before the death or remarriage of his wife. He makes her an executrix, and gives her a legacy out of the proceeds ; and he gives it to her " upon my said son arriving at full age."

If the fee did not pass, with, also, the intermediate rents, to the general residuary devisee, or to the residuary legatees of the proceeds of sale, it passed to the heirs at law of the testator, subject to the execution of the power of

sale. (1 *R. S.*, 729, § 56; *Vail* vs. *Vail*, 4 *Paige R.*, 317; *Wood* vs. *Keyes*, 8 *Paige*, 365; *Germond* vs. *Jones*, 2 *Hill*, 569; *Sharpsteen*, vs. *Tillou*, 3 *Cow. R.*, 651.)

In such case, the heirs at law, had, at law, a right to enter upon the land and to receive the rents and profits, and might maintain ejectment for the same until a sale or division shall be made. (*Lindenburger* vs. *Matlack*, 4 *Wash. C. C.*, 278; *Jackson* vs. *Scanber*, 7 *Cow. R.*, 187.)

If, as was suggested by the applicant's counsel, it was the intention of the testator to provide for the widow, it is plain that it was equally his intention that the power of sale, to effectuate that intention, should have been exercised in her life-time, and if not so exercised, then it could not be exerted at all. (*Jackson* vs. *Jansen*, 6 *John R.*, 73; *Sharpsteen* vs. *Tillou*, 3 *Cow.*, *R.*, 651.)

The counsel also suggests another seeming difficulty in the way of any construction of the power of sale, as to the time of its execution, other than that for which he contends, by the question,—Suppose the youngest child dies before attaining his majority, when is the power to be executed, or what becomes of it?

We answer: The power may be exerted at once upon the death of that child. (*Hawley* vs. *James*, 5 *Paige*, 463; *S. C.*, 16 *Wend*, 60; *Lang* vs. *Ropke*, vol. 10, *Legal Obs.* No. 3, *pp.* 70, 74.)

If this be not so, then the counsel suggests, that unless his construction be adopted, and the power could not be exerted upon the death of the widow, the testator's intention would be defeated by the death of the youngest child before his majority. If this be so, it cannot affect the question here; for the same result might happen if the testator had, without reference to his wife, or any other contingency, in plain terms directed that the estate should not be sold until the youngest child arrived of age; because, if the latter should die within that time, the intention, so far as concerned the legatees, would equally be defeated.

But in this case, the legacies are given to those who would be the heirs at law, and the only difference in result would be, that they would take the land in lieu of the legacies.

II. The land is not converted into personalty from the death of the widow.

The criteria which the authorities on the subject of conversion furnish, are these : whether the will has prescribed a sale absolutely and at all events, for all the purposes of the will—irrespective of all contingencies, and independent of all discretion.   If the sale is made for a special purpose, or the general purposes of the will, and these purposes fail, conversion does not take place, or, *if to be made on a given event, it depends upon the occurrence of that event.* ( *Wright* vs. *Methodist Church,* 1 *Hoff. C. R., pp.* 202, 218, 219, *and cases cited ;* 2 *Kent's Com., 7th ed., in note at p.* 230 ; *Bunce* vs. *Vander Grift,* 8 *Paige,* 37, 40.)

The general rule is to date the conversion on death of testator, unless there is something special in the power of sale making its exercise or performance depend on the happening of some event or contingency to arise subsequently, or on the discretion of the executor or trustee to sell or not. (*Arnold* vs. *Gilbert,* 5 *Barb. Sup. R.,* 190.)

III. The Surrogate has no jurisdiction to order an account of proceeds of land ordered by the will to be sold, until actually sold. (2 *R. S.,* 110, § 56, 2*d ed., p.* 47, § 57.)

The case of *Clark* vs. *Clark,* 8 *Paige,* 152, decides only that the Surrogate has authority to call executors to account for proceeds *after* sale made.

So, also, *Stagg* vs. *Jackson,* 2 *Barb. Chan. Rep., p.* 86, affirmed in Court of Appeals, 1 *Coms.,* 206, which says the Surrogate may call executors to account for the proceeds, and for rents and profits *received by them previous to a sale thereof, under a power in the will* of the testator.

In that case the will authorised the executor *expressly* to receive the rents.

IV. The Surrogate has no jurisdiction to order the executor to sell real estate under a power.

The extent of the authorities is that a Court of Equity may make such order. (See *Van Vechten* vs. *Van Veghten*, 8 *Paige*, 123 ; *Arnold* vs. *Gilbert*, 5 *Barb.*, *S. C. R.*, *p.* 195, *and* 1 *Hov. Supp.*, *cited ;* 1 *R. S.*, 734, §§ 94, 96.)

THE SURROGATE.—The testator made the following devise and bequest : "I hereby give, devise, and bequeath, to my dearly beloved wife, Sally Ann, my house and lot 115 Elizabeth Street, in the city of New York, with all my household furniture, to her during her widowhood, until my youngest son shall have arrived at full legal age, when I hereby direct the same to be sold by my executors, at private sale, or at public auction, in their discretion ; and after paying from the proceeds of said sale the sum of five hundred dollars to my said wife, Sally Ann, provided she be my widow, sole and unmarried,—and which sum of five hundred dollars I hereby give to her from such sale, upon my said youngest son arriving at full age, and she my said wife remaining my widow ; and after paying the sum of one hundred and fifty dollars from the proceeds of such sale to my daughter, Harriet, and which I hereby give to her ; and after paying the sum of one hundred and fifty dollars from the proceeds of such sale, to my daughter, Zillah, and which I hereby give to her ; I then hereby will and direct, that all the rest, residue and remainder, the proceeds of such sale be equally divided among my seven sons, &c., share and share alike, and which I hereby give, devise and bequeath, to them accordingly." After sundry legacies to his wife and children, he then concludes the will thus, " And, in the last place, I hereby give, devise, and bequeath, all the rest, residue, and remainder, of my

estate, not herein and hereby devised, to my said wife, Sally Ann, to her heirs, executors, administrators, and assigns, forever, hereby declaring that the aforesaid devises to my said wife are in lieu and instead of all dower," &c. His wife was nominated his executrix, and his son William executor.

The testator died in May, 1847, and his widow in November, 1848, leaving three of their surviving children minors, and who are still under age. The assignee of three of the parties entitled to legacies out of the proceeds of the house 115 Elizabeth street, has cited the surviving executor to account, on the ground that on the death of the widow the time arrived when the premises should be sold and the proceeds divided, according to the terms of the will. He also insists that the executor should account for the rents and profits from November, 1848, to the present period.

There is no devise of the land, or of the rents, to the executor; and the direction to sell, though positive and absolute, is conditional as to time, and is a mere power in trust, which does not break the descent. (2 *R. S. 3d ed., p.* 14, § 56; *Sharpsteen* vs. *Tillou*, 3 *Cowen,* 651; *Jackson* vs. *Schauber*, 7 *Cowen,* 187; *Jackson* vs. *Winne*, 7 *Wendell*, 47.) Laying the power aside for a moment, the will contains an express devise to the wife during her widowhood, *until* the youngest son attain 21, and then there is no other disposition of the property, apart from the power, except the general residuary devise to the widow. If real estate be specifically devised, and the devise does not take effect from the incompetency of the devisee to take, or from a lapse by the death of the devisee in the testator's life-time, or from a partial revocation of the will, the property is excepted from the effect of the residuary clause, and descends to the heir at law. (*James* vs. *James*, 4 *Paige*, 115; *Van Kleeck* vs. *Dutch Church*, 6 *Paige,* 600.) But independent of the power, there is no other devise in the present will, except to the wife. There is no specified gift, or

8

charge, which has failed, so that the heir could claim the benefit of the intended exception from the residuary clause, and of its failure as an invalid or ineffectual devise. But whether the devise to the widow during her widowhood, until the youngest son should attain 21, amounted to a term during his minority; or whether the widow's interest ceased under this provision on her death (*Carter* vs. *Church*, 1 *Ch. Ca.*, 113; *Levet* vs. *Needham*, 2 *Vern.*, 138; *Manfield* vs. *Dugard*, 1 *Eq. Ca. Ab.*, 195, *fol.* 4); or, on the latter supposition, whether the estate passed to the heirs, or to the widow under the residuary devise, it is not now necessary for me to consider; for, the legatees of the proceeds of the real estate have no right to their bequests until the power can be executed, and it makes no difference to them who has the property while the power is in a state of suspense. The only question, therefore, is, whether the time has arrived for the execution of the power. This, like all questions arising on the construction of wills, is to be determined by the intention of the testator; and the intention depends upon the language of the particular provision in question, and a comparison of this with other clauses of the will, tending to illustrate and elucidate the general scope and object of the instrument.

The testator left his wife with three minor children; and in suspending the sale of the real estate till the youngest attained age, his general object was, probably, to provide for the minor children, which he sought to accomplish through the medium of their mother, to whom he gave the property during her widowhood and until the power could be exercised, and whom he also made residuary devisee. He does not, in terms, provide for the occurrence of the death of the mother during the minority of the children; but if she took the estate under the will, she could care for the interests of the minors; or if it passed to the heirs at law, the minors would still be protected. There might also be prudential reasons for withholding the power of sale until all the children were of full age, and were legally compe-

tent to look after their own affairs; for so long as the property remained in lands, the rights of the infants were secured. I see no reason, therefore, for giving any other interpretation to the clause vesting the power of sale in the executor, than may fairly be drawn from the very language used. There must be very clear evidence of a contrary intention, drawn from other parts of the will, to overrule express and definite words. The house is devised to the wife " during her widowhood, until my youngest son arrive at full legal age, *when* I hereby direct the same to be sold." To hold that the word "*when*" refers to the phrase " *during her widowhood*," instead of the immediate antecedent, " *until my youngest son shall have arrived at full legal age*," would be a palpable and violent transgression of the ordinary rules of language. If " *when*" is to be referred to " *during*," then the power could have been executed any time " *during* " his wife's widowhood, and that, certainly, was never intended. " *When*" is the proper correlative of " *until*," and fixes the event on which the power arises. It is true, the testator seems to have supposed his widow would be alive when that event would happen; and in that he is disappointed; but he has not provided for such a contingency so as to affect the power, and it cannot now be done, though it were a clear omission, which I am not satisfied that it was. What would be the effect of the death of the minors before attaining full age, it will be time enough to consider when that occurrence takes place. All that I am now properly required to decide is, whether the time specified for the execution of the power has arrived, and I am clear that it has not. There is a direction for an out and out conversion, but it is not immediate ; and I am not aware of any principle or authority giving countenance to the idea that it can be accelerated, so long as the condition on which it hinges is still future, and capable of literal consummation. (*Sugden on Powers, vol.* 1, *pp.* 334–339 ; *vol.* 2, *pp.* 473–478; 25 *Wend.,* 224). The executors at present have nothing to do with the property or its rents, and are not

accountable for that over which they have no control. The applicant, therefore, entirely fails in his case, and the petition must be dismissed. Under the circumstances, I shall not award costs against him. The costs of the executors will be paid out of the estate.